**Mary M. CARROLL, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**TALMAN FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHICAGO, Defendant.**

**No. 76 C 1729.**

United States District Court, N. D. Illinois, E. D.

Feb. 28, 1978.

Michael T. Welch, Winston & Strawn, Chicago, Ill., for plaintiff.

Robert A. Deane, Stephen L. Ruff, Ruff & Grotefeld, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

FLAUM, District Judge:

The instant lawsuit is brought as a class action for declaratory, injunctive and monetary relief on behalf of all female employees of defendant Talman Federal Savings and Loan Association of Chicago [Talman] who have been limited in their choice of dress which they are allowed to wear at work. Suit is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Several motions are presently pending before the court. Both parties move for summary judgment. Plaintiff also moves for certification of a class of employees who are required to conform to the allegedly discriminatory dress code. Fed.R.Civ.P. 23(c). Since the court grants defendant's motion for summary judgment it does not reach the class issue. After a brief outline of the facts which are not in dispute, the sole legal issue presented by this case shall be discussed.

The defendant, Talman, is a savings and loan association with its main office located in Chicago. The association, which has eight branch offices, employs approximately 800 persons. Plaintiff challenges defendant's policy that requires females to wear certain kinds of dress. Although she characterizes this policy as a "uniform policy" it is readily apparent that female employees have far more discretion than they would if they were required to wear uniforms. Under the policy, females are permitted to wear five basic items in any combination they choose. Females must wear either a color coordinated skirt or slacks and either a jacket, tunic or vest. The skirt can be pleated, gored, or straight. The tunic can be belted or unbelted. Choice of blouses, sweaters and hosiery is subject to the discretion of the female employees. These "career ensembles" are required to be worn every business day except the last Tuesday of every month and a week in August and the week between December 25 and January 1. These two weeks are called glamour days and female employees are required to wear "appropriate business attire" at those times.

Until March, 1974 defendant paid half the cost of the uniform while the employee was required to pay the other half. Since March, 1974 defendant has paid the cost of one ensemble for each employee. However, the defendant treats the delivery of such uniforms as income and withholds the amount from each woman's pay based upon the value of the uniform. If employees wish additional items, they must purchase them at their own expense. Of a total of 675 teller, office and managerial personnel, 525 are women who must wear the ensembles. This group includes a senior vice-president and treasurer of defendant.

The men are not required to wear a career ensemble of any kind. From approximately 1958 to 1969, defendant supplied suits to its male tellers and required that they be worn during work. The program was discontinued at the request of the male tellers. The defendant's dress code policy currently requires that men wear business suits or a combination of a business-type sport jacket and pants. Ties are also required to be worn. Men receive no dispensation from this requirement on the last Tuesday of each month or during the so-called glamour days. The dress code does not further define what a business suit or business-type sport coat is.

The branch or home office manager determines what is or is not appropriate business attire on a strictly ad hoc basis. The manager determines the appropriateness of the females' discretionary choices in the same manner. Defendant's personnel manager testified at his disposition that certain managers had permitted males to wear "leisure" type suits as long as they wore ties.

Plaintiff was hired March 5, 1973 as a part-time employee. From 1973 to 1976,

she attended DePaul University while working for the defendant from 14 to 18 hours per week. Prior to May 11, 1976 plaintiff conformed to defendant's dress code. On May 11, 14 and 18 plaintiff appeared at work dressed in appropriate business attire. On May 21, she stated to her superiors that she no longer intended to wear the "uniform." On May 22 she received a written memorandum from her superiors that stated she would be indefinitely suspended without pay until she donned her "career ensemble." Up to that time plaintiff had been considered a model employee who performed all of her duties satisfactorily. The sole reason for her suspension was her refusal to wear any of the career ensemble coordinated dress. Plaintiff was graduated from DePaul in June of 1976 and has been employed by the City of Chicago as a substitute teacher since September of 1976. She intends to return to Talman after resolution of her case on a part-time basis.

The case before the court appears to be one of first impression. The parties have not cited to the court, nor has the court in its own research discovered a case which is factually apposite. The precise issue before the court is whether a dress code which is applicable to both men and women but is more restrictive as to women violates Title VII. In considering such a question, the court is guided by the general precept that Title VII must be construed liberally to achieve its objectives. *See Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 929 (5th Cir. 1975). The court must also note that Title VII requires "an interpretation animated by the broad humanitarian and remedial purposes underlying the federal proscription of employment discrimination." *Coles v. Penny,* 174 U.S.App. D.C. 277, 285, 531 F.2d 609, 616 (1976).

In forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes. Section 703(a)(1) subjects to scrutiny and eliminates such irrational impediments to job opportunities and enjoy-

ment which have plagued women in the past.

*Sprogis v. United Air Lines, Inc.,* 444 F.2d 1194, 1198 (7th Cir. 1971), *cert. denied,* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1972).

Pointing to such language in *Sprogis* and other cases which are factually inapposite, plaintiff argues that Title VII mandates the elimination of any terms or conditions of employment which treat similarly situated male and female employees differently. Specifically, plaintiff argues defendant by its dress codes has isolated one group on the basis of sex. The direct consequence of this policy is to establish different terms and conditions of employment for men and women. Defendant counters that employer specifications requiring different modes of dress and grooming for men and women do not constitute sex discrimination. Inasmuch as the defendant's dress code does not significantly impair employment opportunities or benefits of either sex, defendant argues, it is not cognizable under Title VII even though such code makes different requirements on the basis of sex.

At the outset it must be noted that there is no suggestion in the present case that the differing standard is a mere pretext for limiting employment to one sex. A claim that a dress code was created and enforced for such a purpose would state a claim under Title VII. *See Earwood v. Continental Southeastern Lines, Inc.,* 539 F.2d 1349, 1351 (4th Cir. 1976); *Jarrell v. Eastern Air Lines, Inc.,* 430 F.Supp. 884, 892 (E.D.Va. 1977). Indeed in the present case, the vast majority of employees of defendant are women.

Although there are no cases factually apposite, the general rule appears settled that distinctions based on sex in dress codes do not violate Title VII. "It is clear that regulations promulgated by employers which require male employees to conform to different grooming and dress standards than female employees is not sex discrimination within meaning of Title VII." *Fountain v. Safeway Stores, Inc.,* 555 F.2d 753, 755 (9th Cir. 197″). *See also Barker v.*

*Taft Broadcasting Co.*, 549 F.2d 400 (6th Cir. 1977); *Earwood v. Continental Southeastern Lines, Inc.*, 539 F.2d 1349 (4th Cir. 1976); *Longo v. Carlisle DeCoppet & Co.*, 537 F.2d 685 (2d Cir. 1976) (*per curiam*); *Knott v. Missouri Pacific Railroad Co.*, 527 F.3d 1249 (8th Cir. 1975); *Willingham v. Macon Telegraph Publishing Co.*, 507 F.2d 1084 (5th Cir. 1975) (en banc); *Baker v. California Land Title Co.*, 507 F.2d 895 (9th Cir. 1974), *cert. denied*, 422 U.S. 1046, 95 S.Ct. 2664, 45 L.Ed.2d 699 (1975); *Dodge v. Giant Food, Inc.*, 160 U.S.App.D.C. 9, 488 F.2d 1333 (1973) (*per curiam*); *Fagan v. National Cash Register Co.*, 157 U.S.App. D.C. 15, 481 F.2d 1115 (1973). This rule is premised on the fact that such restrictions do not amount to a restriction in employment opportunity. The intent of Congress in enacting Title VII was to ensure that all males and females have equal job opportunities.

We perceive the intent of Congress to have been the guarantee of equal job opportunity for males and females. Providing such opportunity is where the emphasis rightly lies. This is to say [Title VII] should reach any device or policy of an employer which serves to deny acquisition and retention of a job or promotion in a job to an individual *because* the individual is either male or female.

. . . . .

. . . Equal employment *opportunity* may be secured only when employers are barred from discriminating against employees on the basis of immutable characteristics, such as race or national origin. Similarly, an employer cannot have one hiring policy for men and another for women *if* the distinction is based on some fundamental right. But a hiring policy that distinguishes on some other ground, such as grooming codes or length of hair, is related more closely to the employer's choice of how to run his business than to equality of employment opportunity.

*Willingham v. Macon Telegraph Publishing Co.*, 507 F.2d at 1091 [emphasis in the original]. *See also Earwood v. Continental Southeastern Lines, Inc.*, 539 F.2d at 1351.

Plaintiff attempts to distinguish the above cases by arguing that in most of them there was not a complete relationship between gender and the regulation and that therefore there was no gender-based discrimination. For example, in the so-called hair cases there are two classes: one class consists of long-haired males; the second, females who are permitted to have long hair and short-haired males. Not all the cases have such factual distinctions. In *Fountain*, for example, the male plaintiff was required to wear a tie. This requirement applied exclusively to males as a class. There was a complete relationship between gender and the regulation. The court ruled there was no violation. In *Jerrell v. Eastern Air Lines, Inc.*, 430 F.Supp. 884 (E.D. Va.1977), a female flight attendant challenged the defendant's weight regulations which required that females be lighter proportionately to the population than males. There was again a differing, more onerous, standard applicable to females but not males. Noting that the airline weight program did not limit employment opportunities for women, the court ruled plaintiff had not established a violation of Title VII. *See also In Re National Airlines, Inc.*, 434 F.Supp. 269 (S.D.Fla.1977) [no Title VII violation where only 22% of females in the United States can meet the average maximum weight limitations while 30% of the men in the United States could reach the average maximum weight.] [1] As long as such practices are not a bar to employment opportunity no violation exists. An em-

---

1. Plaintiff cites *Laffey v. Northwestern Airlines, Inc.*, 366 F.Supp. 763 (D.D.C.1973) as the "closest case on point." However, *Laffey* involved a general policy of discrimination in pay, seniority and the filling of job openings. The defendant also had a policy prohibiting female cabin attendants from wearing eyeglasses and requiring that females use a different type of luggage than males. The focus on the case was on violations of the Equal Pay Act, 29 U.S.C. § 206(d) as well as Title VII. *Laffey* did not discuss a dress code applicable to both sexes but more restrictive as to one. To the extent, if any, that *Laffey* applies in this case, therefore, this court declines to follow it.

ployer is not required to account for personal preference. "We have then a situation where a male was indeed employed, and with full knowledge of the company's policy, insisted upon performing his own work on his own terms and upon requiring the company to accommodate to his projection of his own image." *Fagan v. National Cash Register Co.,* 157 U.S.App.D.C. at 22, 481 F.2d at 1122.

Plaintiff also cites a series of cases where discrimination on the basis of sex was found violative of the Act. In *Sprogis v. United Air Lines, Inc.,* 444 F.2d 1194 (7th Cir. 1971), *cert. denied,* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1972), the defendant airline had a no marriage policy for its female employees. Male flight attendants were not subject to a similar regulation. The plaintiff, a female flight attendant, was discharged after she was married. In *Allen v. Lovejoy,* 553 F.2d 522 (6th Cir. 1977) females were required upon marriage to sign certain forms changing their names to that of their husbands. When the plaintiff refused, she was discharged. A female was discharged after refusing to comply with the sexual advances of her superior in *Barnes v. Costle,* 183 U.S.App.D.C. 90, 561 F.2d 983 (1977).[2] The above cases are distinguishable on two grounds. First, in each case the requirement applied exclusively to one gender-based class entirely excluding the other. In the present case, the regulation is applicable to *both* classes, but merely places a different restriction on one class. Second, in each case the regulation discriminated against a sexual class for the exercise of a fundamental right or operated to infringe a traditionally protected privacy interest.

Discrimination based on either immutable sex characteristics or constitutionally protected activities such as marriage or child rearing violate [Title VII] because they present obstacles to employment of one sex that cannot be overcome. On the other hand, discrimination based upon factors of personal preference does not necessarily restrict employment opportunities and this is not forbidden.

*Earwood v. Continental Southeastern Lines, Inc.,* 539 F.2d at 1351. Clearly, wearing a particular mode of clothing does not amount to a fundamental right. Although the right to wear a certain mode of dress is clearly constitutionally protected, such protection does not normally extend to deprivations by private employers. *Id.* at 1351.[3]

 Defendant's requirements do not prevent employment opportunity. The court, therefore, holds there is no Title VII violation where an employer discharges an employee who refused to abide by dress regulations which are in fact applicable to both sexes but as to one sex imposes a more defined standard of uniformity. Accordingly, defendant's motion for summary judgment is granted and this case is dismissed. Judgment is entered for the defendant.

It is so ordered.

**2.** *See also Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971) (*per curiam*) [employee's policy of accepting applications from men with pre-school children but not from women violated Title VII].

**3.** This case does not involve seemingly neutral characteristics which operate to prevent females from gaining employment as in *Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977). In *Dothard,* the statutory height and weight requirements applied equally to men and women. The Court held statistical proof that the requirements would eliminate 41.14 percent of the female population from consideration for employment while eliminating less than one percent of the male population established a *prima facie* case of discrimination. Here, the plaintiff has gained employment but must wear certain clothing as a condition to employment. Such a requirement does not constitute "artificial, arbitrary, and unnecessary *barriers*" to employment. *Griggs v. Duke Power Co.,* 401 U.S. 424 at 431, 91 S.Ct. 849, 28 L.Ed.2d 158 [emphasis supplied].