Data La Von LANIGAN, Plaintiff,

v.

**BARTLETT AND COMPANY GRAIN, Defendant.**

**No. 76CV260–W–2.**

United States District Court, W. D. Missouri, W. D.

March 28, 1979.

William R. Williams, Vold, Sullivan, Finnegan, Gordon & Williams, Kansas City, Mo., for plaintiff.

Robert L. Driscoll, Stinson, Mag & Fizzell, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION AND JUDGMENT

COLLINSON, District Judge.

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff contends that defendant's dress code policies illegally discriminate against women with respect to the terms, conditions and privileges of their employment in that they prohibit women from wearing pants in the executive office portion of defendant's offices. Plaintiff was discharged because of her failure to comply with these policies. The issues have been fully briefed by the parties following a trial on January 31, 1979. The Court holds that defendant's dress code policies do not violate Title VII and, accordingly, holds that plaintiff's discharge did not constitute an illegal act of discrimination. The following discussion constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.

The plaintiff is Data La Von Lanigan. Defendant is Bartlett and Company Grain. Plaintiff was employed by defendant on July 26, 1973. She was employed as a secretary in the executive office portion of defendant's home office. This portion of the offices houses defendant's corporate offices, the personnel manager, the executive secretaries and the receptionist. The gen-

eral office portion of the offices houses the data processing, accounting, general clerical, country elevator and merchandising departments. The general office portion of the offices is physically separated from the executive office portion. Plaintiff's immediate supervisor was W. Robert Berg, Vice President and Secretary, although she also worked on occasion for another officer and the personnel manager.

When plaintiff began working, defendant did not permit women to wear pantsuits in either the general or the executive office areas. In apparent response to employee requests, defendant announced a change in policy effective October 12, 1973, which permitted women employees to wear pantsuits in the general offices, but not in the executive offices. At all times, plaintiff was fully aware of the provisions of the dress code policies and has never contended that she did not know the consequences for failure to conform to the policies.

Following this change of policy, plaintiff wore pantsuits to work on several occasions although she continued to work in the executive offices. On July 25, 1974, plaintiff wore a pantsuit to work and was discharged for failure to comply with the company dress code policies. She timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission and timely filed the instant action following receipt of her right to sue letter. Plaintiff is a resident of Missouri and all of the acts constituting the alleged discrimination occurred in this judicial district. The Court has jurisdiction over the parties and over this controversy. 42 U.S.C. § 2000e–5(f)(3); 28 U.S.C. § 1343.

Plaintiff recognizes that application of the rule set forth in the "haircut" cases would require denial of her claim. These cases are unanimous in holding that nothing in Title VII prohibits an employer from making decisions based on factors such as grooming and dress. See, e. g., *Knott v. Missouri Pacific Railroad*, 527 F.2d 1249 (8th Cir. 1975); *Barker v. Taft Broadcasting Co.*, 549 F.2d 400 (6th Cir. 1977); *Earwood v. Continental Southeastern Lines, Inc.*, 539 F.2d 1349 (4th Cir. 1976); *Longo v. Carlisle-DeCoppet & Co.*, 537 F.2d 685 (2d Cir. 1976); *Willingham v. Macon Telegraph Publishing Co.*, 507 F.2d 1084 (5th Cir. 1975); *Dodge v. Giant Food, Inc.*, 160 U.S. App.D.C. 9, 488 F.2d 1333 (1973); *Fagan v. National Cash Register Co.*, 157 U.S.App. D.C. 15, 481 F.2d 1115 (1973). Plaintiff argues that these cases are distinguishable because not allowing women to wear pants perpetuates the stereotype that men are more capable than women of making business decisions. Perpetuation of this alleged stereotype, plaintiff contends, brings this case within that line of cases referred to as "sex-plus." [1] This line of cases rests on the theory that disparate treatment of a male or female subclass violates Title VII since the employer has added a factor for one sex that is not added to the other sex as a condition of employment. The discrimination in these cases is directed against members of the protected class who possess the additional factor. In this case, the additional factor is the wearing of pantsuits. Thus, among employees in the executive offices, women wearing pants (the subclass) are subject to discharge while women wearing skirts and men wearing pants are not subject to discharge.

It is undisputed that women who work in the general offices are treated differently on this issue than those women who work in the executive offices. However, the Court deems defendant's dress code policies as to the general office employees irrelevant. Plaintiff never worked in those offices. They are physically separated from the executive offices. More importantly, employees in the executive offices deal with defendant's customers and members of the public. Following plaintiff's "sex-plus" analysis, the issue is whether the difference in treatment among women in the execu-

---

1. The phrase was coined by Judge Brown in his dissent to the denial of a petition for rehearing en banc in *Phillips v. Martin Marietta Corp.*, 411 F.2d 1, *petition for rehearing denied*, 416 F.2d 1257 (5th Cir. 1969), *vacated and remanded*, 400 U.S. 542, 90 S.Ct. 496, 27 L.Ed.2d 613 (1971).

tive offices constitutes sex discrimination when compared to the treatment of men in the executive offices. Stated differently, the issue is whether a discharge based on plaintiff's sex plus her wearing pantsuits in violation of a known dress code policy constitutes sex discrimination.[2]

In *Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 90 S.Ct. 496, 27 L.Ed.2d 613 (1971), the Supreme Court held in effect that disparate treatment with respect to a subclass of one sex can violate Title VII. The leading case applying the *Phillips* rationale is *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194 (7th Cir. 1971), where the court invalidated an airline policy which required female stewardesses to be unmarried. The court thus held that Title VII is not confined to discrimination based solely on sex since the airline discriminated against some, but not all, women. A similar result was reached in *Allen v. Lovejoy*, 553 F.2d 522 (6th Cir. 1977) where the court invalidated a rule requiring married women to change their names to that of their husbands. See also, *Barnes v. Costle*, 561 F.2d 983 (D.C. Cir. 1973).

■ There is no question, then, that "sex-plus" employment policies can be challenged under Title VII. However, the "haircut cases" cannot be dismissed out of hand since they unanimously hold that disparate treatment of a subclass (men with long hair) of a protected class (males) does not violate Title VII. Reconciliation of these "sex-plus" cases with *Phillips* and similar cases is generally based on a perceived Congressional intent to limit application of Title VII in the "sex-plus" area to those employment policies which discriminate on the basis of (1) immutable characteristics, (2) characteristics which are changeable but which involve fundamental rights (such as having children or getting married), and (3) characteristics which are changeable but which significantly affect employment opportunities afforded to one sex. See generally, Schlei and Grossman, *Employment Discrimination Law*, pp. 337–360 (1976).

Plaintiff does not contend that she is unable to wear clothes other than pantsuits or that she is in any way physically unable to comply with the dress code. In other words, plaintiff's affection for pantsuits is not an "immutable characteristic." Plaintiff does not contend that she has a "fundamental right" to wear pantsuits to work. Plaintiff does contend that the dress code significantly affects employment opportunities because it perpetuates "a sexist, chauvinistic attitude in employment." Plaintiff asserts that the Court should find a violation of Title VII because "[T]he employer could offer no excuse whatsoever as to why his secretary could perform a job in a more efficient manner in a skirt rather than a pantsuit, and could only speculate as to whether or not a skirt could be considered more business-like."

■ These contentions miss the point. An employer is not required to justify any business practice in a Title VII action until and unless the plaintiff has established a *prima facie* case of discrimination. The fact that defendant introduced no evidence on the "business necessity" of a dress code prohibiting pantsuits on women working in its executive offices proves nothing because the Court holds that plaintiff has not established a *prima facie* case of discrimination. Accordingly, defendant was not obligated to justify its dress code policies. See, *Jacobs v. Martin Sweets Co., Inc.*, 550 F.2d 364, 371 (6th Cir. 1977), *cert. den.* 431 U.S. 917, 97 S.Ct. 2180, 52 L.Ed.2d 227 (1977), and *Olson v. Philco-Ford*, 531 F.2d 474, 477 (10th Cir. 1976) (applying order of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), in sex discrimination context). *Cf. Henry v. Ford Motor Co.*, 553 F.2d 46, 48 n. 3 (8th Cir. 1977), and *King v. Yellow Freight Systems, Inc.*, 523 F.2d 879, 882 (8th

---

**2.** It should be emphasized that plaintiff does not contend that she was discharged because she is a woman. The fact that she is a woman is important only because the particular aspect of dress code policy in question applies only to women. However, for purposes of responding to the "sex-plus" contention, it is useful to adopt that terminology in stating the issue.

Cir. 1975) (questioning applicability of *McDonnell Douglas* to discharge case).

■■■ The Court believes that there is no principled distinction between the rationale of the "haircut" cases and this case. Employment decisions, such as plaintiff's discharge, based on either dress codes or policies regarding hair length are more closely related to the company's choice of how to run its business rather than to its obligation to provide equal employment opportunities. The decision to project a certain image as one aspect of company policy is the employer's prerogative which employees may accept or reject. If they choose to reject the policy, they are subject to such sanctions as deemed appropriate by the company. An employer is simply not required to account for personal preferences with respect to dress and grooming standards. In this case, plaintiff has not demonstrated how defendant's dress code policies impermissibly restrict equal employment opportunities and her contention that the policies perpetuate a stereotype is simply a matter of opinion.

This holding is not novel and does not depart from existing law. It follows the rationale of the "haircut" cases and is consistent with other cases dealing with dress codes. In *Fountain v. Safeway Stores, Inc.,* 555 F.2d 753 (9th Cir. 1977), a former male employee challenged Safeway's dress and grooming regulations which required men to wear a tie as a condition of employment. Plaintiff contended that his discharge for failure to comply with those regulations "constituted sex discrimination in that female employees did not have to comply with this requirement." *Id.* at 755. Citing its own precedent and the "haircut" cases, the court held that summary judgment was properly granted in favor of Safeway stating, "[I]t is clear that regulations promulgated by employers which require male employees to conform to different grooming and dress standards than female employees is not sex discrimination within the meaning of Title VII." *Id.* at 755. *Fountain* was cited with approval in a case involving discharge of a female employee for failure to comply with an employer's policy requiring women to wear certain kinds of dress. *Carroll v. Talman Federal Savings and Loan Assn.,* 448 F.Supp. 79 (N.D.Ill.1978). The *Carroll* court rejected a "sex-plus" contention similar to the one advanced in this case. *Id.* at 83. The Court finds the reasoning of those cases persuasive and agrees with their results. In view of the foregoing discussion, it is

ORDERED, ADJUDGED AND DECREED that judgment be entered in favor of defendant Bartlett and Company Grain and against plaintiff Data La Von Lanigan. Costs are taxed to plaintiff.