Eunice HOLLINS, Plaintiff,

v.

ATLANTIC CO., INC., et al., Defendants.

No. 1:97 CV 175.

United States District Court,
N.D. Ohio,
Eastern Division.

Dec. 4, 1997.

Blair Hodgman, Allen & Hodgman, Cleveland, OH, for Plaintiff.

Jeffrey M. Embleton, John F. Burke, III, Mansour, Gavin, Gerlack & Manos, Cleveland, OH, for Defendants.

MEMORANDUM OPINION AND ORDER

NUGENT, District Judge.

This matter comes before the Court upon the Report and Recommendation of a Magistrate Judge of this Court submitted on October 27, 1997 (Document # 46). The named Report is hereby ADOPTED by this Court, along with the findings of fact and conclusions of law therein.

Plaintiff Ms. Eunice Hollins (hereinafter "Ms. Hollins") filed an Amended Complaint on May 29, 1997, against Atlantic Company, Incorporated, Swagelok Company, Crawford Fitting Company, and John Doe Companies # 1–100 (hereinafter collectively referred to as "Defendants"), alleging violations of 42 U.S.C. § 1981, 42 U.S.C. §§ 2000e *et seq.*, and O.R.C. §§ 4112.02(A) and 4112.99.

The Amended Complaint alleges that Defendants have racially discriminated against Ms. Hollins, an African American and an employee of Defendants, in the application of its personal appearance policy; and, that Defendants have retaliated against her for filing a discrimination complaint with the appropriate governmental agency.

Defendants filed a Motion for Summary Judgment (Document # 19) on August 19, 1997. Plaintiff filed her Response to Defendants' Motion for Summary Judgment with submission of documents to be filed under seal on September 8, 1997. Defendants' Reply to Plaintiff's Response was filed on September 16, 1997. This Court referred this case to Magistrate Judge Jack B. Streepy for the preparation of a Report and Recommendation on September 23, 1997. *See* 28 U.S.C. § 636(b); Local R. 7.3. On October 27, 1997, Magistrate Judge Streepy issued a Report and Recommendation, recommending Defendants' Motion for Summary Judgment be granted. Plaintiff filed Objections to the Report and Recommendation and Defendants filed its Brief In Opposition to Plaintiff's Objections. The Report and Recommendation of the Magistrate Judge, along with Plaintiff's Objections and Defendants' Opposition to Plaintiff's Objections are herein reviewed by this Court.

**Factual Background**

The following factual summary is based on depositions, affidavits and exhibits filed in this case as well as the very thorough and complete review of the facts in the Report and Recommendation of Magistrate Judge Streepy. Those material facts which are controverted and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to Plaintiff, the non-moving party.

Ms. Hollins has worked for Defendants since July 25, 1994. She has always been a machine operator in Defendants' auxiliary department. During all relevant times, Defendants had a personal appearance policy covering matters such as clothing and grooming. Male employees must have "a neat natural haircut" that does not extend over the ears or shirt collar and must be clean shaven. Female employees must "have a neat and well groomed hair style" and are to wear "conservative" clothing. Long hair is discouraged for safety reasons, but if worn, it must be tied back.

Ms. Hollins and her husband liked to have her hair "nicely styled." Ms. Hollins considered "styling her hair" to be an important hobby. Ms. Hollins came to work wearing her hair style in "finger waves" on August 17, 1994. Her foreman, Mr. Joseph Konopinski, felt the style was neat, well groomed, and did not present a safety hazard. Nonetheless, he told her it was "too different" and did not meet company policy.

When Ms. Hollins came back to work with the same hair style the following day, Mr. Randall Adams, a plant superintendent, informed her that the style did not conform to company policy. As a result, Ms. Hollins replaced it with a plain style she did not like. Further, the plant manager, Mr. Bhushan Shendure, felt Ms. Hollins's hair style was "eye catching." Therefore, he informed Mr. Konopinski that Ms. Hollins's hair style was "inappropriate."

In the fall of 1994, Mr. Shendure told Ms. Hollins she should get company approval of her hair styles. Mr. Shendure told her to bring in pictures of the types of hair styles she would like to wear. Ms. Hollins brought

in a picture of a hair style with braids that she wanted to wear and showed it to Mr. Adams. Mr. Adams told her the style was unacceptable.

Mr. A.T. Patil took over Mr. Shendure's position as plant manager in the winter of 1995. Ms. Hollins and Ms. Vanessa Toney, the only other non-supervisory black American female on the same shift as Ms. Hollins, approached Mr. Patil concerning acceptable hair styles. Mr. Patil told them to bring in pictures for approval.

A few days later, Ms. Hollins brought in a book of pictures depicting various hair styles. Mr. Patil and Mr. Adams approved some "finger wave" and "braided styles" and told her to bring in pictures for approval if she wished to wear another style.

In January 1996, Ms. Hollins wore her hair in a ponytail. Mr. Adams reminded her she was required to inform the company before changing her hair style and said her ponytail was "too drastic." Mr. Adams told Ms. Hollins that if she failed to keep her hair within the guidelines, she would not have a "good working relationship" with him, and she "would not have a reason to be working [for Defendants]."

In February 1996, Ms. Hollins had a wage review with Mr. Konopinski. Mr. Konopinski told her that her failure to follow the hair style guidelines would affect future reviews. Later in 1996, Ms. Hollins wore the braided style previously approved by Mr. Patil and Mr. Adams. Mr. Konopinski knew it had been approved. Nonetheless, he told her "it would be nice" if she would let them know when she was going to change her hair style.

Ms. Hollins showed a hair style book to Mr. Adams and requested that she be permitted to wear two braided styles. Mr. Adams told her that these two styles were acceptable, provided no safety issues were presented. Ms. Hollins was told she could change her style without asking if she stayed within the previously agreed-upon styles. However, if she wore a style "different from what we had discussed," she risked being asked to "change the style immediately" and would be out the investment she had put into the hair style.

At Ms. Hollins's performance review on June 26, 1996, Mr. Konopinski reminded Ms. Hollins she must wear a correct hair style and must continue to follow her agreement with Mr. Adams. The next day, June 27, 1996, Ms. Hollins filed a complaint of race discrimination with the Ohio Civil Rights Commission and EEOC.

In the EEOC complaint, Ms. Hollins claimed she was not allowed to wear her hair in a ponytail. Mr. Adams told Ms. Hollins he was upset that she had filed an EEOC complaint. Mr. Adams also told her he had never said she could not wear a ponytail. Following the meeting, Ms. Hollins wore her hair in a ponytail on several occasions without being told it was unacceptable.

Mr. Konopinski left Defendants in late 1996, and Mr. Mike Gagel became Ms. Hollins's new foreman. On January 20, 1997, Ms. Hollins wore the style of ponytail Mr. Adams had previously said was appropriate. Although the style was neat, well groomed, and presented no safety hazard, it immediately caught Mr. Gagel's attention. This hair style concerned him as a supervisor because "[he] was aware of the civil rights letter, or charge, or whatever … and that [he] had to address the problem." That morning, Mr. Gagel met with Mr. Adams, Ms. Hollins's immediate supervisor, Ms. Ann Peters, and two department supervisors, Mr. Larry Ault and Mr. Tony Kaylor, to discuss Ms. Hollins's hair style and the "intent" of the grooming standard. At that meeting, they all agreed "our grooming standards are such that an [employee's] hair should not in itself call attention to [the employee]."

After this meeting, Mr. Gagel then informed Ms. Hollins that her ponytail was unacceptable because it was more than two or three inches above her head and because it called attention to her. This was the first time any Defendants' official imposed a height requirement on her ponytail.

Mr. Gagel also told Ms. Hollins he had read her file and knew she had challenged the hair-style policy. Mr. Gagel was aware she had filed a complaint with the EEOC and believed it could be seen as one way in which she challenged Defendants' policy. Mr. Ga-

gel warned Ms. Hollins that challenging Defendants' policy could result in termination or transfer and that failure to follow hair style guidelines could affect future wage increases. There is no evidence that Mr. Gagel had the authority to order either a transfer or a termination. Neither a manager nor a superintendent threatened Ms. Hollins with termination or transfer after she filed her EEOC complaint on June 27, 1996.

In her four-month performance review, Mr. Gagel lowered Ms. Hollins's ratings from 5 to 4 for both personal appearance and cooperativeness because of her January 20, 1997 ponytail. Ms. Hollins overall review was nonetheless higher than before and sufficient to receive a 50 cent per hour raise from $9.30 to $9.80, effective February 24, 1997. Another performance review in June 1997 resulted in a 70 cent raise to $10.50 per hour.

There is no evidence that the lowered personal appearance and cooperativeness ratings reduced the raises which Ms. Hollins received in February and June of 1997. In fact, Ms. Hollins received substantial raises after each performance review despite the fact she received a lower performance evaluation for personal appearance and cooperativeness.

### Standard of Review for Magistrate Judge's Report and Recommendation

■ The applicable district court standard of review for a magistrate's report and recommendation depends upon whether objections were made to that report. When objections are made to a report and recommendation of a magistrate judge, the district court reviews the case *de novo*. FED. R.CIV.P. 72(b) provides this standard of review; it states, in pertinent part, the following:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or re-

commit the matter to the magistrate judge with instructions.

Accordingly, this Court will review the Reports and Recommendation, to which timely objections have been filed, *de novo*. *See Dacas Nursing Support Systems, Inc. v. N.L.R.B.*, 7 F.3d 511 (6th Cir.1993).

### Conclusion

■ The Court has reviewed the Report and Recommendation of the instant case *de novo*. *See Massey v. City of Ferndale*, 7 F.3d 506 (6th Cir.1993). The Court has also considered all of the pleadings, affidavits, motions, and filings of the parties. This Court adopts the findings of fact and conclusions of law of the Magistrate Judge as its own. Magistrate Judge Streepy correctly determined that Plaintiff has failed to make a *prima facie* case of race discrimination and retaliation, and as such, Defendants' Motion for Summary Judgment should be granted.

Plaintiff claims that the Magistrate Judge erred in recommending that the Plaintiff had not shown that a *prima facie* case of race discrimination and that no evidence of retaliation exists. Plaintiff asserts that the Magistrate Judge failed to view the evidence in the light most favorable to the non-moving party. The Magistrate Judge did not err.

Plaintiff contends that Defendants discriminated against her when it found she violated its personal appearance policy and when Defendants required her to obtain pre-approval of any change in her hair style. Plaintiff does not present any direct evidence of discrimination. Absent direct evidence, a plaintiff must prove discrimination by the method set in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Under federal law, "(1) (the plaintiff must establish a *prima facie* case of racial discrimination; (2) the employer must articulate some legitimate, nondiscriminatory reason for its actions; and (3) the plaintiff must prove that the stated reason was in fact pretextual)." *Harrison v. Metro. Gov't. of Nashville and Davidson County*, 80 F.3d 1107 (6th Cir.), *cert denied*, —— U.S. ——, 117 S.Ct. 169, 136

L.Ed.2d 111 (1996). At all times, the Plaintiff bears the burden of persuading the trier of fact that the Defendants intentionally discriminated against her. *Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■■■ Generally, an employer does not unlawfully discriminate by adopting and enforcing a personal appearance or grooming policy designed to protect a company image. *Lanigan v. Bartlett and Co. Grain*, 466 F.Supp. 1388, 1391 (W.D.Mo.1979). However, an employer discriminates if it subjects a minority employee to an entirely different dress code than that applicable to similarly situated non-minority employee. *See Carroll v. Talman Fed. Sav. & Loan Assn. of Chicago*, 604 F.2d 1028, 1030 (7th Cir.1979), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1316, 63 L.Ed.2d 762 (1980); *Batson v. Powell*, 912 F.Supp. 565, 575–74 (D.D.C.1996).

To establish a *prima facie* case of discriminatory discipline, Ms. Hollins must establish that (1) she belongs to a racial minority and (2) "for the same or similar conduct, [she] was treated differently than similarly-situated non-minority employees." *Harrison*, 80 F.3d at 1115 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992)). This test applies to an issue related to hair style policy. *See Batson*, 912 F.Supp. at 573.

A "similarly situated non-minority employee" is one who has "dealt with the same supervisor, [has] been subject to the same standards and [has] engaged in the same conduct without such differentiating or mitigating circumstances [as] would distinguish their conduct or the employer's treatment of them for it." *Mitchell*, 964 F.2d at 583. A "precise equivalence in culpability" between Ms. Hollins's conduct and that of similarly-situated white employees is not required; misconduct of "comparable seriousness" is

sufficient. *Harrison*, 80 F.3d at 1115. Similarly situated employees "need not hold the exact same jobs; however, their duties, responsibilities and applicable standards of conduct must be sufficiently similar in all relevant aspects so as to render them comparable." *Jurrus v. Frank*, 932 F.Supp. 988, 995 (N.D.Ohio 1993).

In Plaintiff's Objections to the Report and Recommendation of the Magistrate Judge, Plaintiff has submitted the supplemental affidavits of Ms. Hollins and Ms. Toney claiming to correct the inadequacies of their original affidavits. This so-called supplemental evidence was submitted far beyond the discovery deadline of August 12, 1997, and after the Magistrate Judge issued his Report and Recommendation. The supplemental affidavits claim to show that Ms. Hollins and Ms. Toney both personally observed non-protected employees in the presence of the Plant Manager, Mr. Adams, wearing the hairstyles in question that the two affiants believe to be similar to Plaintiff. Plaintiff asserts that these supplemental affidavits establish that Plaintiff has established a *prima facie* case of discrimination.[1] This evidence is insufficient to support Plaintiff's claim that she was treated differently than a similarly situated non-protected employee because of her race. The Magistrate Judge correctly determined that the Plaintiff has failed to establish that similarly situated non-protected employees were treated differently. Thus, the Magistrate Judge did not err in recommending that this Court grant the employer's Motion for Summary Judgment.

Furthermore, upon a review of the record, the Magistrate Judge did view the evidence in the light most favorable to the Plaintiff. It is well-established that the Plaintiff must present "affirmative evidence" to support her position. In a disparate treatment case, it is the Plaintiff who has the burden to present

---

**1.** Defendant objects to the introduction of new evidence after the close of discovery and after the Magistrate Judge had issued his Report and Recommendation. This Court is now functioning as a reviewing court and not as a fact finder. Plaintiff's supplemental affidavits are merely an attempt to address some of the deficiencies contained in Plaintiff's original affidavits. Moreover, while FED.R.CIV.P. 72(b) allows the court to consider additional evidence, it does not re-

quire the court to consider such evidence. Defendants' objections are well taken; however, to ensure completeness, the Court has reviewed the supplemental affidavits of Ms. Hollins and Ms. Toney and has determined they would not change the Court's acceptance of the Report and Recommendation of the Magistrate Judge recommending that Defendants' Motion for Summary Judgment be granted.

all the evidence regarding similarly situated non-protected employees who have received different treatment. In the present case, the Plaintiff failed to present any evidence that the non-protected employees with whom she compares her treatment were similarly situated in all respects or that their conduct or hairstyle was of "comparable seriousness" to the Plaintiff.

In Plaintiff's objections, she contends that the supervisors were aware of the hairstyles worn by certain non-protected employees. Plaintiff argues that this alleged awareness confirms the fact that the company applies different standards to black employees than it does to others. Upon a review of the evidence in this case and upon a reading of the deposition testimony, there is no evidence that non-protected employees were in violation of the Defendants' personal appearance standards and that such alleged violation was not considered in that non-protected employees' evaluation. Each supervisor testified that those non-protected employees, Ms. Crain, Ms. Smith, Ms. Riebe, Ms. Frye, and Ms. Cone's hairstyles did not violate the personal appearance standard. Further, there is no evidence that these alleged hairstyles were in contravention of the policy. Plaintiff solely relies on her opinion and the opinion of Ms. Toney that the non-protected employees' hairstyles are of comparable seriousness as Plaintiff. However, there is no evidence that any supervisor has ever determined that a non-protected employee wore a comparable hairstyle and was not notified of being in violation of the Defendants' policy. Thus, when viewing the evidence in the light most favorable to the Plaintiff, the Plaintiff did not meet her burden, as outlined in *Mitchell*, of showing disparate treatment.

■ Finally, Plaintiff asserts that the Magistrate Judge erred in recommending that the Plaintiff had not suffered an adverse employment action and had failed to present a *prima facie* case of retaliation. The Plaintiff claims "the Magistrate Judge does not dispute that there is evidence that Ms. Hollins's supervisor, Mr. Gagel, retaliated against her for filing her EEOC charge by (1) lowering her personal appearance rating; (2) lowering her cooperativeness rating; and

(3) threatening to fire or transfer her if she did not stop "challenging" the company's actions." Upon a review of the Report and Recommendation of the Magistrate Judge, the Magistrate judge never stated that there was evidence that Mr. Gagel retaliated against the Plaintiff for filing her EEOC charge. Based upon a review of the record, there is absolutely no evidence that Mr. Gagel retaliated against Ms. Hollins for filing her EEOC charge.

A *prima facie* case of retaliation requires a showing:

(1) That Plaintiff engaged in an activity protected by Title VII;

(2) That the exercise of her civil rights was known by the Defendants;

(3) That thereafter, the Defendants took an employment action adverse to the Plaintiff and,

(4) That there was a causal connection between the protected activity and the adverse employment action.

*Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 877 (6th Cir.) *cert. denied*, 502 U.S. 1013, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991).

The Magistrate Judge recommended that there was no evidence of an adverse employment action. The Magistrate Judge specifically stated that Ms. Hollins did not receive an overall poor evaluation. Upon a review of the record, the Plaintiff cannot establish a *prima facie* case of retaliation. First, Plaintiff cannot present any evidence of an adverse employment action and second, there is no evidence of a causal connection between the protected activity and any alleged adverse employment action.

The undisputed evidence establishes that the Plaintiff's ratings were minimally effected due to her non-compliance with the appearance standards. Ms. Hollins went from a "very good" to a "good" rating. There is no evidence that Ms. Hollins's reviews were lowered because she filed her EEOC complaint. Ms. Hollins filed her EEOC complaint on June 27, 1996 and her lowered evaluation did not occur until January 1997. The evidence shows the Plaintiff had several employment evaluations during this interim period. Further, during the reviews, Ms.

Hollins was informed that if she violated the appearance standard, her future evaluations might suffer. The evidence shows that Plaintiff violated the appearance standard in January 1997 and it was noted in her review.

Furthermore, Plaintiff did not receive an overall poor evaluation. To the contrary, Ms. Hollins received two evaluations subsequent to filing her EEOC complaint which resulted in an hourly wage increase from $9.30 to $10.50. In *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 896 (10th Cir.1994), the court stated that satisfactory marks in an overall evaluation, although lower than a previous evaluation, does not constitute an adverse employment action in the face of receiving a merit raise. In the present case, the Plaintiff has continued to receive favorable reviews and wage increases. The Plaintiff has not shown that she suffered an adverse employment action. Thus, Plaintiff has not established a *prima facie* case of retaliation.

For the foregoing reasons, the Report and Recommendation of Magistrate Judge Streepy is hereby ADOPTED. Accordingly, Defendants' Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.